FILED BY \_\_\_\_NA\_\_\_\_ D.C.

Jun 8, 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FTL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

JOHN CULBERTSON, *pro se* by his attorney-in-fact

                          Plaintiff,

     -against-

ALL-WAYS TOWING & STORAGE, INC

                          Defendant.

CIVIL ACTION NO. _____

**COMPLAINT**

---

      This is an action under the Servicemembers Civil Relief Act ("SCRA") 50 U.S.C. App. §§501- *et seq.*,[1] and corollary Florida law[2], to protect the Plaintiff against the Defendant's repetitive violation of the SCRA, by reason of the unlawful seizures, towings and detentions of Plaintiff's motor vehicle and the unlawful imposition of storage costs and penalties upon the Plaintiff by the Defendant.

      The *pro se* Plaintiff, John Culbertson, as and for his Complaint against the Defendant, All-Ways Towing & Storage Inc., alleges upon information and belief as follows:

---

[1] "Courts have generally construed the SSCRA [Soldiers' and Sailors' Civil relief Act] liberally to protect those in uniform, and the same should be true with the SCRA. The U.S. Supreme Court has said that the statute should be read "with an eye friendly to those who dropped their affairs to answer their country's call." Le *Maistre v. Leffers*, 333 U.S. 1, 6 (1948)." A Judge's guide to the Servicemembers Civil Relief Act.
https://www.tncourts.gov/sites/default/files/docs/judges_guide_to_servicemembers_civil_relief_act.pdf

[2] To maintain Florida's reputation as the most military-friendly state in our nation" (, https://floridavets.org/wp-content/uploads/2022/04/Florida-Military-Friendly-Guide-2021.pdf - Governor DeSantis' Statement) the State has enacted extensive legislation including, *inter alia*, the Florida Uniformed Servicemembers Protection Act, Fla. Stat §§250.80 *et seq* which mirrors and in some cases enhances the protections afforded by the SCRA.

## THE PARTIES

1. Plaintiff Pvt. John Culbertson is a citizen of the State of Florida, and a soldier on active duty with the Army of the United States of America.

2. Plaintiff is currently stationed at Fort Moore (formerly Benning), in Georgia, where he is now undergoing Basic Training, and has been further designated for Paratrooper Training. Depending upon the program designated for each soldier, Basic Training can last from four (4) weeks to seven (7) months.

3. Defendant All-Ways Towing & Storage, Inc. is a corporation existing under the laws of the State of Florida, with its principal place of business at 2550 S. Park Road, Hallandale Beach, Florida, 33009, and is authorized to engage in the business of towing motor vehicles for hire.

4. All-Ways Towing & Storage Inc. has received an "F" rating from the Better Business Bureau, its lowest possible rating, by reason of Defendant's persistent illegal conduct, and obdurate failure and refusal to respond to numerous consumer complaints against it.[3]

## JURISDICTION AND VENUE

5. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, and 50 U.S.C. App. §§ 512, 592 and 597, as well as supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) since Defendant resides in this judicial district, and § 1391(b)(2) because a substantial part of the events and/or omissions giving rise to the claim occurred in this judicial district.

---

[3] https://www.bbb.org/us/fl/hallandale/profile/towing-company/all-ways-towing-storage-inc-0633-92014783/customer-reviews

## GENERAL ALLEGATIONS

7.     John Culbertson is the registered owner of a 2008, silver, Honda Fit automobile (VIN: JH-MGD37698S009583) bearing Michigan License Plate No. DAY-3414.  Culbertson's vehicle is particularly distinctive in appearance because its right rear quarter-panel and window were severely damaged and dented in a recent collision.

8.     On or about Sunday, May 7, 2023, Culbertson parked his vehicle in an empty space in the parking lot adjacent to 5213 North Dixie Highway in Oakland Park, Florida, a rental apartment building in a multi-building complex operated as The Village at Pointe East, ("Pointe East"), while he visited Richard Mills, a new, lease-holding resident at Pointe East.

9.     Culbertson used a parking space allocated to the resident-leaseholder, with his permission.

10.    Unbeknownst to Culbertson, sometime after 11:00 PM on May 7, 2023, Defendant by its agent(s) or employee(s) surreptitiously seized, Culbertson's vehicle and removed it to Defendant's lot in Hallandale Beach, Florida, a distance of sixteen (16) miles.

11.    Believing that his vehicle had been stolen, Culbertson contacted the Broward County Sheriff's office and was advised – three hours later[4] – that the vehicle had been seized and towed by the Defendant.

12.    On Monday May 8, 2023, Culbertson traveled the sixteen (16) miles (half an hour) to Hollandale Beach via Uber ($29.19), and appeared at the Defendant's lot where his car was detained.  He was compelled to pay $168.01 dollars (in cash) to discharge Defendant's

---

[4] Broward County towing regulations require that the towing company must notify the Broward County Sheriff's Office of the towing within 30 minutes after completing the tow. Broward County Ordinance Sec.20-176.19(b)(8).See generally,
https://library.municode.com/fl/broward_county/codes/code_of_ordinances?nodeId=PTIICOOR_CH20LIBURE_ARTVIICOPRCO_DIV2TOIMRE_S20-176.19TOIMRE.

purported lien for towing costs, storage fees and penalties, demanded by Defendant as a pre-condition to returning possession of the vehicle to Plaintiff.

13. Culbertson advised the Defendant that he was, in fact, authorized to park in the resident-leaseholder's (unused) parking space, was unemployed and had enlisted for military service, and could not afford to pay the fees and penalties. To which Defendant's employee responded, "tough s---t!"[5]

14. Culbertson borrowed the money, paid the charges and penalties, and secured the return of his vehicle. Culbertson was not provided with an invoice, manifest or tow sheet at the time of payment as required by Broward County towing regulations,[6] nor was he provided with the consumer bill of rights required by those regulations.[7]

15. Culbertson and the resident-leaseholder subsequently complained to the manager of the Village at Pointe East, and were advised that visitors to residents at that apartment complex were obligated to post a parking permit issued by the landlord on the dashboard of their vehicles in order to park at Pointe East during visits.

16. That same day May 8, 2023, the resident-leaseholder obtained a such a parking permit for the future use of his guests.

17. On Sunday, May 28, 2023, Culbertson again visited his host at Pointe East to attend a farewell dinner with friends who had come to congratulate him on the occasion of his induction into military service. The resident-leaseholder provided Culbertson with the aforesaid

---

[5] Broward County towing regulations require that the towing company's employees must, " act in a professional manner when performing licensed services, be knowledgeable of the rights of the individual who has had or is about to have a vehicle towed or immobilized, and answer any and all questions to the best of their ability. Broward Co. Ord. Sec. 20-176.19(b)(7).

[6] A copy of the applicable invoice, manifest, or tow sheet shall be given to the vehicle owner at the time of payment. Broward Co. Ord.. Sec. 20-176.19(b)(5).

[7] Broward Co. Ord. Sec. 20-176.20(i).

parking permit issued by the manager of Pointe East, and agreed that Culbertson could park his vehicle in the resident-leaseholder's (unused) parking space until such time as Culbertson was able to afford and to arrange for long-term storage of his automobile, for the four-year duration of his active service enlistment.

18. On Memorial Day, Monday May 29, 2023, Culbertson stored virtually all of his personal property in his automobile, parked it (with the parking permit displayed on the dashboard) in the resident-leaseholder's space, and departed for Basic Training.

19. At all times thereafter, the parking permit provided by Pointe East was prominently displayed on the dark grey dashboard of Culbertson's vehicle and was clearly visible through the windshield.

20. Nevertheless, on or before June 1, 2023, the Defendant again seized Culbertson's vehicle and towed it sixteen (16) miles to Defendant's lot in Hallandale Beach, Florida, notwithstanding that it was lawfully parked in a vacant space, displaying a parking permit issued by Pointe East.[8]

21. Upon discovering that Culbertson's automobile was again missing, the resident-leaseholder spoke with the manager at Pointe East, who recalled issuing the parking permit, and was at a loss to explain why any vehicle displaying such a permit would have been towed.[9] The

---

[8] Broward County's towing regulations prohibit a towing a vehicle displaying a visible valid receipt for parking. Broward Co. Ord. Sec. 20-176.19(b)(9).

[9] Broward County towing regulations require that when ordering the towing or immobilization of a vehicle without the prior written consent of the vehicle owner, the property owner shall provide written instruction specific to each individual vehicle to be towed or immobilized, and shall date and sign such instruction. Broward Co. Ord. Sec. 20-176.19(a)(2)(c). The instruction may be sent by electronic facsimile only if the date and time of instruction can be verified on the facsimile. Id. The requirement for written instructions from the property owner is not satisfied: (1) where the instruction occurs in advance of the actual unauthorized parking of the vehicle; (2) where the instruction is general in nature and unrelated to specific, individual, and identifiable vehicles; or (3) where the property owner giving

5

manager declined to contact the Defendant, or get involved in any way, but offered to issue a replacement parking permit.

22. At no time did the manager contend that Culbertson's vehicle was "parked in such a manner that it restricts the normal operation of business," a legal prerequisite to authorizing a towing company to remove an illegally parked vehicle. Fla. Stat.§715.07 (2)(a)(5).

23. The vehicle was not parked on a public right of way, did not obstruct access to a private driveway, and the owner of Pointe East did not sign an order directing that the vehicle be removed. Fla. Stat. .§715.07(2)(a)(5).[10]

24. Culbertson's vehicle was not illegally parked or unauthorized. Its seizure and detention by Defendant was patently unlawful.

25. Defendant's removal of Culbertson's vehicle to its storage lot more than ten (10) miles distant from the site at which it was parked, was also unlawful. See Fla. St.§ 715.07(2)(a)(1.a.) ("Any towed vehicle… must be stored at a site within a 10-mile radius of the point of removal in any county of 500,000 population or more…").[11]

26. The resident-leaseholder then contacted the Defendant, explained the situation, advised that the vehicle was lawfully parked with the authorization and permission of all concerned, and asked for the vehicle to be returned, not only because it was improperly towed, but more particularly because the owner was soldier on active duty, protected by the SCRA, who should not be distracted from his military obligations.

---

instruction to tow is an agent or employee of or affiliated with the tow company. Broward Co. Ord. Sec. 20-176.19(a)(2)(c).

[10] Broward County towing regulations specify in detail how this requirement must be performed. See, Broward Co. Ord. Sec. 20-176.19(a)(2)(c) set forth at footnote 9.

[11] The 2022 population of Broward according is 1,947,026 with a growth rate of 0.99% according to the most recent US census data. https://www.census.gov/quickfacts/fact/table/browardcountyflorida.

27. The Defendant's employee – who declined to identify himself – responded that he couldn't care less; and that Culbertson had already accrued multiple storage fees, and would again have to arrange for full payment of all costs and storage fees (accruing daily); and would have to secure legal representation because Defendant would not return, or allow access to, the vehicle to anyone but the title holder.

28. The resident-leaseholder asked the Defendant's employee to identify Defendant's regular legal counsel—for the purpose of avoiding this action – but the employee refused to do so, and refused to contact his supervisor, or Defendant's owner about this matter.

## AS AND FOR A FIRST CAUSE OF ACTION - DECLARATORY JUDGMENT

29. Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 through 26 hereof with the same force and effect as if fully set forth herein.

30. Plaintiff seeks a judicial determination of the parties' rights and obligations under the Servicemembers Civil Relief Act 50 U.S.C. App. §§501- *et seq.* ("SCRA") and Florida's Uniformed Service Members Protection Act. Fla. Stat §§250.80 *et seq.*[12]

31. The SCRA provides broad legal and financial protections to those who have answered the Nation's call to serve. "The SCRA is a law created to provide extra protections for servicemembers in the event that legal or financial transactions adversely affect their rights

---

[12] "It is the intent of the Legislature that men and women who serve in the National Guard of any state, the United States Armed Forces, and Armed Forces Reserves understand their rights under applicable state and federal laws. Further, it is the intent of the Legislature that Florida residents and businesses understand the rights afforded to the men and women who volunteer their time and sacrifice their lives to protect the freedoms granted by the Constitutions of the United States and the State of Florida." Fla. Stat. §§250.81

Under Florid law, "A ...seizure of property for nonpayment of any sum due under any obligation, or for breach of the terms of such obligation, is not valid if made during the period of state active duty or active duty or within 30 days thereafter, unless upon an order previously granted by the court and a return made to and approved by the court. (Fla.St. §250.5205) (2) See Generally, Florida-Military-Friendly-Guide-2021.pdf, https://floridavets.org/wp-content/uploads/2022/04/Florida-Military-Friendly-Guide-2021.pdf

7

during military or uniformed service. These protections enable servicemembers to devote their entire energy to the defense needs of the Nation."[13]

32. Since World War II, Congress has recognized the need to protect service members from exploitative commercial practices. "This bill springs from the desire of the people of the United States to make sure as far as possible that men in service are not placed at a civil disadvantage during their absence. It springs from the inability of men who are in service to properly manage their normal business affairs while away. It likewise arises from the differences in pay which a soldier received and what the same man normally earns in civil life."[14]

33. John Culbertson is a physically fit, 23 year-old, high school graduate with some college education. Apart from his ability and desire to defend this Nation, John Culbertson has no other significant asset, but his car. John Culbertson's current Army rank is Private E-1. As such, he will earn $1,467 per month, or approximately $48.9 per day. The daily storage fee imposed by Defendant is $28.00, more than half of Plaintiff's gross daily income.

34. Florida law grants a towing-storage operator a lien on lawfully towed vehicles for reasonable towing, storage and other charges incurred. Fla. St.§713.78.

35. Under Florida law, if a [lawfully] towed car is more than 3 years old, it can be sold at auction by the towing company if the car remains unclaimed for 35 days. Fla.Stat.§713.78(6). Accordingly, absent relief from this Court, Pvy. John Culbertson will lose

---

[13] https://www.consumerfinance.gov/consumer-tools/educator-tools/servicemembers/the-servicemembers-civil-relief-act-scra/#:~:text=The%20SCRA%20is%20a%20law,defense%20needs%20of%20the%20Nation. See also https://www.military.com/benefits/military-legal-matters/servicemembers-civil-relief-act-overview.html

[14] See, *The Servicemembers Civil Relief Act (SCRA): A Private Cause of Action*, Congressional Research Service Report .https://www.everycrsreport.com/files/20110124_R41470_b29b83429d6e3ec6ae329270a0a1b5d0886129bd.pdf (detailing the legislative history and legal precedents affording and extending special llegal protections to service members)

all of his assets, effectively without due process of law, and Pvt. Culbertson has done nothing wrong. He was not unlawfully parked.

36.     It is therefore respectfully submitted that this Court should order the Defendant to return Pvt. Culbertson's car to him, and reimburse the money received from him as a result of the first improper seizure. At a minimum, this Court should stay the accrual of any fees or charges that may otherwise be imposed upon Plaintiff during the pendency of this action, and enjoin the sale or other disposition of Pvt. Culbertson's property until such time as this Court determines whether there is any factual basis for Defendant's second putative lien.

37.     An actual and justiciable controversy presently exists between the parties concerning the proper application of the SCRA (and Florida law), and the scope of the parties' rights and obligations thereunder.

38.     For example, "If a servicemember fails to perform an obligation arising under a contract and a penalty is incurred arising from that nonperformance, a court may reduce or waive the fine or penalty if— (1) the servicemember was in military service at the time the fine or penalty was incurred; and (2) the ability of the servicemember to perform the obligation was materially affected by such military service." SCRA § 523.

39.     Under SCRA § 524 the Court "may on its own motion and shall on application by the servicemember—(2) vacate or stay an attachment or garnishment of property, money, or debts in the possession of the servicemember or a third party, whether before or after judgment.

40.     Under SCRA § 532(a)(1) (B) the lease or bailment of property [including a motor vehicle] may not be rescinded or terminated for a breach of terms of the contract occurring before or during that person's military service, nor may the property be repossessed for such

breach without a court order. As such, this Court may make any disposition of the property as is equitable to preserve the interests of all parties. SCRA § 532(c)(3)

41. SCRA § 533 provides that the Court may stay proceedings for a period of time as justice and equity require, and adjust a securitization obligation incurred with respect to personal property, to preserve the interests of all parties. As such, "[a] sale, foreclosure, or seizure of property for a breach of an obligation incurred by a service member (a) shall not be valid if made during, or within 9 months after, the period of the servicemember's military service except— (1) upon a court order granted before such sale, foreclosure, or seizure with a return made and approved by the court.

42. More to the point, SCRA § 537 (Enforcement of storage liens) explicitly prohibits the enforcement of storage liens: "A person holding a lien on the property or effects of a servicemember may not, during any period of military service of the servicemember and for 90 days thereafter, foreclose or enforce any lien on such property or effects without a court order granted before foreclosure or enforcement. *Id.* Thus, "[i]n a proceeding to foreclose or enforce a lien subject to this section, the court may on its own motion, <u>and shall if requested by a servicemember</u> whose ability to comply with the obligation resulting in the proceeding is materially affected by military service – (1) stay the proceeding for a period of time as justice and equity require; or (2) adjust the obligation to preserve the interests of all parties. Private Culbertson so requests. *Id.*

43. The seriousness of this statutory prohibition is emphasized by subsection (c) to section 537, which provides that "[a] person who knowingly takes an action contrary to this section, or attempts to do so, shall be fined as provided in title 18, United States Code, or imprisoned for not more than one year, or both."

44. The SCRA also provides that in addition to awarding injunctive relief, monetary damages, interest, costs, and attorney fees to any person aggrieved by violation of the SCRA, the Court may also assess a civil penalty – (A) in an amount not exceeding $55,000 for a first violation; and (B) in an amount not exceeding $110,000 for any subsequent violation. *Id.* § 597(a)(3) It is respectfully submitted that the Defendant has persistently committed numerous violations of the SCRA, and that a civil penalty should be assessed against the Defendant.

45. SCRA § 591 provides for both retrospective and anticipatory relief: "A servicemember may, during military service or within 180 days of termination of or release from military service, apply to a court for relief — (1) from any obligation or liability incurred by the servicemember before the servicemember's military service." And the SCRA was amended in 2010 to permit individuals aggrieved by violation of the Act to bring a civil action in this Court. § 597a.[15]

46. Moreover, in order to prevent interference with his military duties, a servicemember is empowered to appoint an individual to act in his place and stead as attorney-in-fact, to pursue his remedies under the SCRA. §519 (a)(2). [16]

47. John Culbertson has appointed Richard Mills, a retired attorney at law (formerly admitted to practice before the state and federal courts in New York, New Jersey and

---

[15] This section was added by P.L. 111-275, effective October 13, 2010.

[16] Section 519 provides:
(a) Representative. A legal representative of a servicemember for purposes of this Act is either of the following:
(1) An attorney acting on the behalf of a servicemember.
(2) An individual possessing a power of attorney.
(b) Application. Whenever the term "servicemember" is used in this Act, such term shall be treated as including a reference to a legal representative of the same.

Pennsylvania, but not admitted in Florida) to act on his behalf (without compensation) as his attorney-in-fact in this matter.

### AS AND FOR A SECOND CAUSE OF ACTION -- CONVERSION AND REPLEVIN

48. Under Florida law, "Any person whose personal property is wrongfully detained by any other person or officer may have a writ of replevin to recover said personal property and any damages sustained by reason of the wrongful taking or detention as herein provided. Fla. Civil Practice & Procedure §78.01 (Right of Replevin.)

49. The Defendant has wrongfully detained the Plaintiff's, Honda Fit, automobile described at ¶7 above, and has acknowledged that Defendant remains in possession of the same, together with the contents of said automobile, and is holding the same at its lot in Hallandale Beach, Florida. The value of such property is no less than $9,000.

50. Plaintiff is the registered owner of the said Honda Fit automobile and is entitled to possession of the same by virtue of a title issued to Plaintiff pursuant to the Law of the State of Michigan, where the vehicle was purchased.

51. Plaintiff was at all times entitled to immediate possession of the contents of his vehicle.[17]

52. The Defendant has wrongfully taken and detained Plaintiff's automobile and contents, despite the same having been parked in a private parking lot with the consent of the resident-leaseholder, and despite having displayed a parking permit issued by the owner of said private lot, and Plaintiff has unlawfully come into possession and control of the said property by unlawfully towing and detaining the same without the knowledge or consent of Plaintiff.

---

[17] Defendant must "permit every vehicle owner to inspect the towed vehicle immediately upon such person's arrival at the storage site and before payment of any charges. The vehicle owner must be permitted to remove from the vehicle any and all personal possessions inside, but not affixed to, the vehicle, including, but not limited to, radios and telephones. The person working at the site must assist any vehicle owner in doing so." Broward Co. Ord. Sec. 20-176.20(f)

Pennsylvania, but not admitted in Florida) to act on his behalf (without compensation) as his attorney-in-fact in this matter.

### AS AND FOR A SECOND CAUSE OF ACTION -- CONVERSION AND REPLEVIN

48. Under Florida law, "Any person whose personal property is wrongfully detained by any other person or officer may have a writ of replevin to recover said personal property and any damages sustained by reason of the wrongful taking or detention as herein provided. Fla. Civil Practice & Procedure §78.01 (Right of Replevin.)

49. The Defendant has wrongfully detained the Plaintiff's, Honda Fit, automobile described at ¶7 above, and has acknowledged that Defendant remains in possession of the same, together with the contents of said automobile, and is holding the same at its lot in Hallandale Beach, Florida. The value of such property is no less than $9,000.

50. Plaintiff is the registered owner of the said Honda Fit automobile and is entitled to possession of the same by virtue of a title issued to Plaintiff pursuant to the Law of the State of Michigan, where the vehicle was purchased.

51. Plaintiff was at all times entitled to immediate possession of the contents of his vehicle.[17]

52. The Defendant has wrongfully taken and detained Plaintiff's automobile and contents, despite the same having been parked in a private parking lot with the consent of the resident-leaseholder, and despite having displayed a parking permit issued by the owner of said private lot, and Plaintiff has unlawfully come into possession and control of the said property by unlawfully towing and detaining the same without the knowledge or consent of Plaintiff.

---

[17] Defendant must "permit every vehicle owner to inspect the towed vehicle immediately upon such person's arrival at the storage site and before payment of any charges. The vehicle owner must be permitted to remove from the vehicle any and all personal possessions inside, but not affixed to, the vehicle, including, but not limited to, radios and telephones. The person working at the site must assist any vehicle owner in doing so." Broward Co. Ord. Sec. 20-176.20(f)

53. The aforesaid property has not been taken for a tax, assessment, or fine pursuant to law.

54. The aforesaid property has not been taken under an execution or attachment against the property of the Plaintiff.

55. Florida law entitles the Plaintiff to the swift return of his property via an Order to Show Cause (Fla. Civil Practice & Procedure § 78.065.(1): "The court without delay shall examine the complaint filed;" and, if on the basis of the complaint and further showing of the plaintiff in support of it the court finds that the defendant has waived in accordance with s. 78.075 his or her right to be notified and heard, the court shall promptly issue an order authorizing the clerk of the court to issue a writ of replevin."

56. If, upon said examination the court finds that the defendant has not waived its right to be notified and heard, the court shall promptly issue an order directed to the defendant to show cause why the claimed property should not be taken from the possession of the defendant and delivered to plaintiff. Such order shall:

> Fix the date and time for hearing on the order.
> a. Direct the time within which service of the order and the complaint shall be made upon the defendant
> b. Fix the manner in which service of the order shall be made on the defendant, and
> c. state that the defendant has the right to appear and oppose the order upon a specified showing, and
> d. state that absent such opposition the court will direct the clerk of the court to issue a writ of replevin.

*Id.*

57. It is therefore respectfully submitted that the Plaintiff is entitled to; (1) the issuance of an Order directing the Defendant to appear and show cause why a writ of replevin should not be issued directing the defendant to return to the Plaintiff the said Honda Fit

automobile and its contents without cost or expense to the Plaintiff; and, (2) final judgment in favor of the Plaintiff.

**WHEREFORE,** Plaintiff respectfully demands judgment against Defendant as follows:

(a) That this Court stay the accrual or enforcement of any charges, fees or penalties by Defendant against the Plaintiff during the pendency of this action, and for the duration of his military service and enjoin any sale of the Plaintiff's property in the possession of Defendant absent a further order of this Court;

(b) That this Court enter a declaratory judgment in Plaintiff's favor and against Defendant directing the Defendant to return Plaintiff's automobile and contents to the place from which it was removed, *i.e.*, the parking lot at the Village at Pointe East in Oakland Park, Florida forthwith, without payment or penalty, or,

(c) That this Court order Defendant to store Plaintiff's vehicle at Defendant's lot, and maintain the same in good order for the duration of Plaintiff's active military service without payment or penalty, and forthwith permit access to the vehicle to Plaintiff's attorney-in-fact for the purpose of removing the contents of the same; and,

(d) That this Court enter judgment in favor of Plaintiff directing Defendant to reimburse the monies ($168.01) heretofore paid by Plaintiff to Defendant to recover his automobile in the first instance;

(e) That this Court award Plaintiff costs, and exemplary damages by reason for Defendant's repeated disregard and violation of the SCRA, and/or,

(f) That this Court find that the Defendant has converted the personal property of the Plaintiff and direct Defendant to replevy the said vehicle and its contents to the Plaintiff, and failing that, to pay damages in an amount to be determined by the Court, together with interest, attorney's fees and costs; and,

(g) That this Court order such other and further relief that the Court deems just and appropriate.

        RESPECTFULLY,

        *By* John Culbertson, *pro se*
        (by his attorney-in-fact Richard Mills)
        5213 N. Dixie Hwy. Apt 2-A
        Oakland Park, Florida 33334
        (412) 605-2141
        Rickmills047@gmail.com

Dated: June 6, 2023.
    Ft. Lauderdale, Florida